<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WEST TRENTON HARDWARE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BROOKLYN TEXTILES, LLC,<br><br>Defendant. | Civil Action No. 21-17662 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff West Trenton Hardware, LLC's Motion for Default Judgment against Defendant Brooklyn Textiles, LLC, pursuant to Federal Rule of Civil Procedure ("Rule") 55(b). (ECF No. 49.) Defendant filed no opposition papers. The Court has carefully considered Plaintiff's Motion as well as Defendant's previous filings in this matter including its Motion to Dismiss and Answer to Plaintiff's Amended Complaint (ECF Nos. 15, 18, 22),[1] and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion is **GRANTED**.

---

[1] *See FOC Fin. Ltd. P'ship v. Nat'l City Com. Cap. Corp.*, 612 F. Supp. 2d 1080, 1084 (D. Ariz. 2009) (concluding that the pleadings and motion to dismiss presented potentially meritorious defenses, and therefore were relevant when setting aside an entry of default and denying a motion for default judgment).

I.      **BACKGROUND**

      A.      **Factual Background**

Plaintiff's Amended Complaint alleges—and Defendant admits in its Answer—that from October 2020 to April 2021, Plaintiff ordered more than $5,000,000 dollars of goods from Defendant. (ECF No. 13 ¶ 7; ECF No. 22 ¶ 7.) The parties established a "course of dealing" whereby "Plaintiff would email Defendant orders, and Defendant would accept those orders by fulfilling them." (ECF No. 13 ¶ 7.)

Between February and April 2021, Plaintiff purchased approximately 20,000,000 medical-grade, nitrile examination gloves from Defendant to fulfill an order from the State of New Jersey. (*Id.* ¶ 8.) Plaintiff placed approximately twenty-seven orders with Defendant over these few months. (*Id.* ¶ 9; ECF No. 13-1 at 2.)[2]

Plaintiff alleges that it would email Defendant orders for nitrile gloves and Defendant would accept those orders and deliver the gloves to a warehouse space leased by the State, which "acted as an aggregating center for the distribution of personal protective equipment ('PPE') during the [COVID-19] pandemic." (ECF No. 13 ¶¶ 10-11.) The gloves were allegedly delivered in boxes with nitrile glove labels. (*Id.* ¶ 15.) After the gloves were delivered, Plaintiff paid Defendant in full. (ECF No. 13 ¶ 16.) To date, Plaintiff has paid Defendant for all gloves delivered. (*Id.*)

Plaintiff further alleges that five days after the final order of gloves was delivered, the State informed Plaintiff that some of the gloves were made of latex instead of nitrile. (*Id.* ¶¶ 17-18.) The State allegedly made this discovery after "a number of first-responders or the patients the first-

---

[2]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

2

responders were examining who had latex allergies suffered reactions consistent with latex exposure." (*Id.* ¶ 19.) Laboratory testing of the gloves also revealed the presence of latex. (*Id.* ¶ 21.) Plaintiff asserts that approximately 5,796,000 of the gloves Defendant supplied were misrepresented as medical-grade nitrile gloves. (*Id.* ¶ 29.)

Within five days of learning about this issue, Plaintiff notified Defendant and demanded that it resolve the nonconformity. (*Id.* ¶ 22.) In response, "Defendant's principal stated that the gloves were 'bought in NJ from a local distributor' and that 'it was of course certified and inspected as 100% nitrile.'" (*Id.* ¶ 23.) Defendant did not correct the issue after receiving notice. (*Id.* ¶ 24.) Plaintiff purchased replacement gloves in the amount of $456,435 and still possesses "nearly all of the non-conforming gloves." (*Id.* ¶ 33.)

**B.    Procedural History**

Defendant previously appeared and participated in this matter. In January 2022, Defendant moved to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). (ECF No. 15.) Defendant's Motion to Dismiss was denied by the Court on February 24, 2023. (ECF No. 21.) In March 2023, Defendant answered the Amended Complaint. (ECF No. 22.) Defendant also filed a Third-Party Complaint against 123 Deals From A to Z LLC, which is the entity Defendant alleges "inspected, packaged, distributed, and supplied" the gloves at issue. (ECF No. 30 ¶ 12.) In October 2023, the Court granted defense counsel's motion to withdraw as Defendant's attorney and directed Defendant to retain new counsel.[3] (ECF No. 41.) On December 21, 2023, the Clerk of Court entered default against Defendant after it failed to retain new legal representation. (ECF

---

[3]    Because Defendant is a corporate entity, Defendant is not permitted to proceed pro se. *Carolee, LLC v. eFashion Solutions, LLC*, Civ. No. 12-02630, 2013 WL 3336789, at *3 (D.N.J. July 2, 2013) (citing *Simbraw v. United States*, 367 F.2d 373, 374 (3d Cir. 1996)).

No. 43.) Accordingly, on April 15, 2024, the Magistrate Judge issued a Report and Recommendation recommending that this Court dismiss Defendant's Third-Party Complaint with prejudice. (ECF No. 48.) On April 26, 2024, Plaintiff filed the present Motion for Default Judgment. (ECF No. 49.) On July 30, 2024, the Court adopted the Report and Recommendation without modification. (ECF No. 50.).

## II.     LEGAL STANDARD

Under Rule 55(a), a Plaintiff may request that the clerk of court enter default as to "a party against whom a judgment for affirmative relief is sought [who] has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Once a default has been entered, the Plaintiff may then seek the entry of a default judgment — either by the clerk or the court itself — under Rule 55(b).

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). Because default judgments prevent the resolution of claims on their merits, the court "does not favor entry of defaults and default judgments." *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)).

Following an entry of default, "[a] defendant is deemed to have admitted the factual allegations of the Complaint . . . except those factual allegations related to the amount of damages." *DirecTV*, 2006 WL 680533, at *1. Still, "[t]he Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit

4

mere conclusions of law." *Id.* (citation and internal quotation marks omitted).

In entering a default judgment, a court must determine whether (1) it has personal and subject matter jurisdiction, (2) the Defendant was properly served, (3) the complaint sufficiently pleads a cause of action; and (4) the Plaintiff has proven damages. *Days Inns Worldwide, Inc. v. T.J. LLC*, Civ. No. 16-8193, 2017 WL 935443, at *2 (D.N.J. Mar. 9, 2017) (citing *Days Inns Worldwide, Inc. v. Jinisha Inc.*, Civ. No. 14-6794, 2015 WL 4508413, at *1 (D.N.J. July 24, 2015)). In addition, the court must evaluate three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)); *see also Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (same). If these factors weigh in favor of the moving party, the court may grant a default judgment.

## III.   DISCUSSION

### A.   Subject Matter Jurisdiction and Personal Jurisdiction

This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a). Plaintiff is a limited liability company organized and existing under the laws of the State of New Jersey. (ECF No. 13 ¶ 5.) Both of its members are citizens of New Jersey, and its principal place of business is in New Jersey. (*Id.*) Because "the citizenship of an LLC is determined by the citizenship of its members," Plaintiff is a citizen of New Jersey. *See Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

Defendant is a limited liability company organized and existing under the laws of the State of New York. *Id.* ¶ 6.) Its sole member is a citizen of New York, and its principal place of business is in New York. (ECF No. 13 ¶ 6.) The parties are therefore diverse. Additionally, Plaintiff

requests a judgment in the amount of $456,435, which exceeds the $75,000 statutory threshold under 28 U.S.C. § 1332(a).

Further, because Defendant did not raise the issue of personal jurisdiction in its Motion to Dismiss, the defense is waived pursuant to Rule 12(h)(1), and the Court may exercise personal jurisdiction over Defendant. *See, e.g.*, *OMNE Servs. Grp., Inc. v. Kraft*, 1996 WL 253323, at *1 (E.D. Pa. May 9, 1996) (finding on a motion for default judgment that the court had personal jurisdiction over defendants who answered without moving to dismiss under Rule 12(b)(2)).

### B.   Service of Process

In a December 7, 2021 letter to the Court requesting an extension of time to answer, Defendant represented that it "waived service on October 18, 2021." (ECF No. 6 at 1.)  Further, Defendant did not raise any service issues in its Motion to Dismiss and continued to participate in this matter. (ECF No. 15.)  A party waives the defense of insufficient service of process when it omits the defense from a motion made under Rule 12. *See* Rule 12(h)(1); *McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 194 (3d Cir. 1998) ("[I]f a Rule 12 motion is made and the defendant omits its objection to the timeliness or effectiveness of service under Rule 12(b)(5), that objection is waived.").  Accordingly, Defendant has waived any insufficient service of process defense, and the Court is satisfied that Defendant has proper notice of this matter. *See Days Inn Worldwide, Inc. v. Platinum Hospitality Grp., LLC*, Civ. No. 10-06454, 2012 WL 117118, at *2 (D.N.J. Jan. 13, 2012) (finding that although a defendant was not served with the summons and complaint, the defendant filed an answer without challenging the timeliness or effectiveness of service under Rule 12(b)(5), and the defendant was thus sufficiently on notice of the proceedings such that default judgment was appropriate).

### C. Sufficiency of Plaintiff's Causes of Action

The Court turns next to the sufficiency of Plaintiff's claims. Plaintiff asserts four causes of action in the Amended Complaint: Count I for breach of contract, Count II for "action to revoke acceptance," Count III for breach of the implied warranty of merchantability, and Count IV for breach of the implied warranty of fitness for a particular purpose. (ECF No. 13.) "In a contract action based on diversity of citizenship, the district court must apply the substantive law of the state in which it sits." *Provident Bank v. Antonucci*, Civ. No. 12-7133, 2014 WL 7051781, at *4 (D.N.J. Dec. 12, 2014) (citing *Am. Cyanamid v. Fermenta Animal Health Co.*, 54 F.3d 177, 180 (3d Cir.1995)).

#### 1. *Breach of Contract*

For a breach-of-contract claim under New Jersey law, Plaintiff must allege that (1) "the parties entered into a contract containing certain terms," (2) "[Plaintiff] did what the contract required [Plaintiff] to do," (3) "[Defendant] did not do what the contract required [Defendant] to do," and (4) "[Defendant's] breach, or failure to do what the contract required, caused a loss to [Plaintiff]." *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

Plaintiff has sufficiently pled each of these elements under Count I. The Amended Complaint asserts that from February through April 2021, Plaintiff purchased 20,000,000 medical-grade, nitrile examination gloves from Defendant to fill an order from the State of New Jersey. (ECF No. 13 ¶ 8.) Defendant admits that the course of dealings between the parties was such that Plaintiff would email Defendant orders, and Defendant would accept those orders by fulfilling them. (ECF No. 22 ¶¶ 7-8.)

Plaintiff alleges that it "did what the contract required [Plaintiff] to do" by paying

Defendant in full.  *Goldfarb*, 245 A.3d at 577; (ECF No. 13 ¶ 16.)  And, Defendant breached the contract by delivering latex gloves instead of the nitrile gloves that Plaintiff ordered.  (*Id.* ¶¶ 17-21.)  Defendant's breach caused a loss in the amount of $456,435 when Plaintiff was forced to purchase replacement gloves to fulfill the State's orders.  (*Id.* ¶ 33.)  Therefore, Plaintiff has sufficiently stated a claim for breach of contract.

### 2. *Action to Revoke Acceptance*

Under the Uniform Commercial Code, "a buyer may revoke [] acceptance of [goods] whose non-conformity substantially impairs its value to [the buyer] if [the buyer] has accepted [the goods] . . . without discovery of such non-conformity if [the buyer's] acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."  N.J. Stat. Ann. § 12A:2-608(1)(b).  "Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects.  It is not effective until the buyer notifies the seller of it."  *Id.* § 12A:2-608(2).

"[R]evocation of acceptance is tantamount to rescission."  *Cuesta v. Classic Wheels, Inc.*, 818 A.2d 448, 451 (N.J. Super. Ct. App. Div. 2003).  In other words, "a buyer who revokes has the 'same rights and duties with regard to the goods involved as if he had rejected them.'"  *Id.*  One of the remedies is cancellation of the contract and recovery of "so much of the price as has been paid."  *Id.*

Plaintiff has sufficiently pled each of these elements for Count II.  As already noted, Plaintiff ordered 20,000,000 nitrile gloves that were delivered by Defendant.  (ECF No. 13 ¶ 8.)  However, five days after the final delivery, Plaintiff learned that some of the gloves were nonconforming.  (*Id.* ¶ 17.)  This substantially impaired the value to Plaintiff; it required Plaintiff

8

to purchase new gloves at an additional $456,435 as a direct result of the "defective nature" of the gloves, which were causing first-responders and medical patients to suffer allergic reactions. (*Id.* ¶¶ 19, 33.)

Further, Plaintiff notified Defendant of the nonconformity within five days of learning about the nonconformity. (*Id.* ¶ 22.) Additionally, Plaintiff asserts that because the boxes containing the gloves were labeled "nitrile," discovery of the nonconformity was difficult at the time of acceptance. (*Id.* ¶ 15.) Therefore, Plaintiff has sufficiently stated a claim for revocation of acceptance.

### 3. *Breach of Implied Warranty of Merchantability*

"A warranty of merchantability is implied in every contract for the sale of goods." *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011). To succeed on an action for breach of the implied warranty of merchantability, a plaintiff must allege: "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of sale, (3) injury and damages to the plaintiff or its property, (4) which were was caused proximately and in fact by the defective nature of the goods, and (5) notice to the seller of injury." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 600 n.8 (2012). In order for goods to be merchantable, they must "conform to the promises or affirmations of fact made on the container or label if any." N.J. Stat. Ann. § 12A:2-314(2)(f).

Plaintiff has sufficiently pled each of these elements for Count III. Defendant sold Plaintiff gloves that did not "conform to the promises or affirmations of fact made on the container or label" because approximately 5,796,000 of the gloves contained latex despite the nitrile labeling on the boxes. (ECF No. 13 ¶ 15.) Plaintiff was required to purchase new gloves at an additional cost of $456,435 due to the "defective nature" of the gloves, which were causing first-responders and

medical patients to suffer allergic reactions. (*Id.* ¶¶ 19, 33.)  Plaintiff also provided notice to Defendant within five days of learning about the issue. (*Id.* ¶ 22.)  Therefore, Plaintiff has sufficiently stated a claim for breach of the implied warranty of merchantability.

### *4.    Implied Warranty of Fitness for a Particular Purpose*

To state a claim for breach of the implied warranty of fitness for a particular purpose, "a plaintiff must establish that: '(1) The seller must have reason to know the buyer's particular purpose'; '(2) The seller must have reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods'; and '(3) The buyer must, in fact, rely upon the seller's skill or judgment.'" *AgroLabs, Inc. v. Innovative Modling, Inc.*, Civ. No. 13-6169, 2014 WL 3535560, at *5 (D.N.J. July 16, 2014) (quoting *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 92 (3d Cir. 1983)). Here, Plaintiff has sufficiently alleged that Defendant had reason to know that Plaintiff relied on Defendant to select nitrile gloves because Defendant knew that the gloves "were to be delivered directly to the warehouse of Plaintiff's customer, the State," and that Plaintiff therefore "did not have the ability to determine prior to shipping or delivery whether the gloves were conforming." (ECF No. 13 ¶ 63.)

Plaintiff has also sufficiently alleged that the particular purpose of the goods at issue was different from the ordinary purpose of the goods. *Carrington Tea Co. v. Pretium Packaging LLC*, Civ. No. 22-03825, 2023 WL 2182310, at * 4 (D.N.J. Feb. 23, 2023). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business . . . ." *Id.* (quoting N.J. Stat. Ann. § 12A:2-315, cmt. 2). Further, whether this warranty arises in a particular case is "a question of fact to be determined by the circumstances of the contract[]. . . . [T]he buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his

10

reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists." N.J. Stat. Ann. § 12A:2-315, cmt. 2.

Based on the circumstances here, Plaintiff has sufficiently pled that Defendant knew that the 20,000,000 nitrile gloves, ordered between February to April 2021, were for the "particular purpose" of fulfilling the State's order for medical-grade nitrile gloves in the midst of the COVID-19 pandemic, and not merely for their "ordinary, general purpose" of providing "greater protection against contamination from punctures, burns, and allergic reactions." (ECF No. 13 ¶ 61.) *Cf. Carrington Tea Co.*, 2023 WL 2182310, at * 4 (finding that the plaintiff's complaint did not sufficiently allege a particular purpose because plaintiff's asserted particular purpose of the goods was the same as the ordinary purpose of the goods). Therefore, Plaintiff has sufficiently asserted a claim for breach of the implied warranty of fitness for a particular purpose.

### D.    Appropriateness of Default Judgment

The Court next must assess: (1) whether Defendant has a meritorious defense, (2) the potential prejudice suffered by Plaintiff if default judgment is not entered, and (3) Defendant's culpability. *Doug Brady*, 250 F.R.D. at 177 (citing *Sambrick*, 834 F.2d at 74).

#### 1.    *Defenses*

Defendant's Answer to the Amended Complaint asserts eleven affirmative defenses. (ECF No. 22 ¶¶ 67-77.) A meritorious defense "is a defense which, if established at trial, would completely bar a plaintiff's recovery." *Trustees of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, Civ. No. 17-05739, 2021 WL 3674353, at *4 (D.N.J. Aug. 19, 2021) (citation omitted). A defendant may not establish a meritorious defense with simple denials or conclusory statements—rather, the defendant "must assert 'specific facts' supporting its meritorious defense." *Wyndham Hotels and Resorts, LLC v.*

11

*Rhonda & Sons, Inc.*, Civ. No. 10-02868, 2011 WL 831940, at *2 (D.N.J. Mar. 1, 2011) (quoting *Worldwide Assocs, Inc. v. Golden Mark Maintenance Ltd.*, 2000 WL 795894, at *2 (E.D. Pa. June 9, 2000)).

Here, Defendant's Answer "does nothing more than deny the individual factual allegations and raise boilerplate defenses in conclusory language." *See Danco*, 2021 WL 3674353, at *4. Thus, even though Defendant's Answer raises multiple conclusory affirmative defenses, "that is not sufficient to avoid default judgment: the 'Defendant need not prove that he will ultimately prevail at trial, but he must demonstrate that he has a facially meritorious defense, not one based on mere denials and conclusory language.'" *Id.* (citing *Phase 3 Media, LLC v. Drake*, Civ. No. 18-3387, 2018 WL 2723879, at *2 (D.N.J. June 6, 2018); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).[4]

Defendant's arguments in its previous Motion to Dismiss are similarly unavailing. Regarding Plaintiff's breach of contract and revocation of acceptance claims, Defendant argues that Plaintiff did not notify Defendant within a reasonable time of any breach, product defect, or rejection of goods.[5] (ECF No. 15-1 at 13.) This argument lacks merit. The Amended Complaint alleges that the gloves were in boxes labeled as "nitrile." (ECF No. 13 ¶ 15.) Any nonconformity related to the type of gloves would not have been readily discernible to Plaintiff, and therefore would have been difficult to discover but for the State informing Plaintiff of the issues with the gloves. Further, Plaintiff notified Defendant within five days after learning of the nonconformity.

---

[4] And, although Defendant went so far as to file a third-party complaint alleging that a third-party defendant was responsible for some or all of Plaintiff's damages, that third-party complaint has been dismissed with prejudice. (ECF No. 50.)

[5] Defendant does not dispute that Plaintiff ordered medical-grade nitrile gloves from Defendant, that Plaintiff paid Defendant for the gloves in full, and that the gloves were nonconforming as some contained latex. (ECF Nos. 15, 18.)

(*Id.* ¶ 22.) And, although Defendant appears to contest the timeliness of Plaintiff's rejection, a consequence of an entry of default is that "[a] defendant is deemed to have admitted the factual allegations of the Complaint." *DirecTV*, 2006 WL 680533, at *1; *see also Buff v. Giglio*, 304 A.2d 771, 773 (N.J. Super. Ct. App. Div. 1973) (quoting N.J. Stat. Ann. § 12A:2-607(3)(a)) ("All that is required where goods have been accepted . . . is notification to the seller 'within a reasonable time after (the buyer) discovers or should have discovered (the breach).'")

Regarding the implied warranty of merchantability, Defendant argues in its Motion to Dismiss that the Amended Complaint fails to plausibly allege that the gloves at issue were defective or not fit for the ordinary purpose for which the gloves were intended. (ECF No. 15.) This argument lacks merit because it fails to acknowledge that in order for "[g]oods to be merchantable[,] [they] must at least . . . conform to the promises or affirmations of fact made on the container or label if any." N.J. Stat. Ann. § 12A:2-314(2)(f). The Amended Complaint asserts that the gloves were delivered in boxes with a nitrile label. (ECF No. 13 ¶ 15.) In response, Defendant provides a simple denial in its Answer. (ECF No. 22 ¶ 15.) To deny that the gloves were nonconforming in a conclusory fashion without more is insufficient. *See Danco*, 2021 WL 3674353, at *4. And, to the extent Defendant claims the nonconformity was caused by a third-party, Defendant has submitted nothing to avail itself of the opportunity to demonstrate this defense and the third-party complaint was indeed dismissed with prejudice (ECF No. 50). *See Werremeyer v. Shinewide Shoes, Ltd.*, Civ. No. 19-10228, 2023 WL 6318068, at *4 (Sep. 28, 2023).

Finally, regarding the implied warranty of fitness for a particular purpose, Defendant argues that the gloves' alleged particular purpose is the same as the gloves' ordinary purpose. (ECF Nos. 15.) On the contrary, the Amended Complaint asserts that the particular purpose of

13

these purchases was to fulfill orders for the State that required these specific nitrile gloves. (ECF No. 13 ¶ 61.) The Amended Complaint adequately alleges that Defendant had reason to know that the particular purpose of Plaintiff's purchase orders was for sourcing medical-grade nitrile examination gloves in the midst of the COVID-19 pandemic to be used by the State. For these reasons, the Court finds that neither the pleadings nor Defendant's previous Motion to Dismiss raised any meritorious defenses sufficient to avoid default judgment.

### 2.   *Prejudice*

When a defendant "fails to respond to a [p]laintiff's claims, the plaintiff will be prejudiced absent a default judgment because [the] plaintiff will be left with no other means to vindicate [its] claims." *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *United States v. DiPiazza*, Civ. No. 16-518, 2016 WL 7015625, at *2 (D.N.J. Nov. 30, 2016)). And, a defendant's "failure to proceed with representation . . . or otherwise defend the action prejudices [plaintiff] as it prevents [plaintiff] from proceeding with this case and obtaining relief." *Trs. of IBEW Loc. 400 Pension Fund v. Four Directions, Inc.*, Civ. No. 22-152, 2023 WL 2245036, at *2 (D.N.J. Feb. 27, 2023)) (citation omitted). Here, because Defendant has failed to obtain new legal representation, this lawsuit cannot proceed. Therefore, Plaintiff has no alternative means of vindicating its claims other than filing for a default judgment. *See Danco*, 2021 WL 3674353, at *3 (finding that the plaintiffs were prejudiced by a corporate defendant's failure to retain new counsel and defend itself).

### 3.   *Culpability*

Finally, when "considering whether a default was the result of a defendant's culpable conduct, the Court asks, 'whether it acted willfully or in bad faith.'" *Tryg Ins.*, 2017 WL 11491955, at *3 (quoting *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)). Here, Defendant acted willfully by failing to obtain legal representation in direct contravention of

a court order.  (*See* ECF No. 41.)  Defendant also failed to respond to the Court's Order to Show Cause and to appear at the show cause hearing, even after the Court ordered former defense counsel to provide Defendant with notice of the same.  (ECF Nos. 43, 47.)  Defendant's failure to retain new counsel and to comply with the Court's Orders evinces willful bad faith.  *See Danco*, 2021 WL 3674353, at *4 (finding that the corporate defendant's failure to retain counsel and appear at multiple status conferences demonstrated willful bad faith).

On balance, these factors warrant entry of a default judgment against Defendant.

### E. Damages

Plaintiff still must prove damages.  *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (citation and internal quotation marks omitted)).  The Court need not accept allegations as to damages as true under Rule 55(b), *DirecTV*, 2006 WL 680533, at *1, and it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of its allegations if the Court finds evidentiary support to be lacking.  *Thompson*, 2017 WL 3634096, at *1 (citing *Doe v. Simone*, Civ. No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013)).

Here, Plaintiff has submitted a declaration from Thomas Nemic, a member of West Trenton Hardware, LLC.  (ECF No. 49.)  The declaration includes invoices showing that Plaintiff purchased $456,435 worth of nitrile examination gloves from a third-party seller in December 2021, substantiating that the cost of replacing the nonconforming gloves was $456,435.  (ECF No. 49-2 at 56-62.)  Nemic further attests that Plaintiff purchased these replacement gloves as a result of Defendant's breach.  (*Id.* at 4.)  The Court is satisfied with Plaintiff's proof of its contract damages.

Plaintiff also requests damages in the amount of approximately $2,193.90 to dispose of the remaining nonconforming gloves. (ECF No. 49-1 at 16.) The declaration from Nemic includes an email outlining the cost of disposal. The email is sufficient to prove the additional damages, which are reasonable and foreseeable in light of Defendant's breach of contract. *See* N.J. Stat. Ann. § 12A:2-714 ("Where the buyer has accepted goods and given notification [of a breach]... he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable."); § 12A:2-715 ("Incidental damages resulting from the seller's breach include . . . any . . . reasonable expense incident to the delay or other breach.").

## IV.    CONCLUSION

For the reasons set forth above, and other good cause shown, Plaintiff's Motion for Default Judgment is **GRANTED**. An appropriate Order follows.

Dated: September 23, 2024

*[signature]*
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE